517 So.2d 1010 (1987)
Roy Raymond CLOUD, Plaintiff-Appellee,
v.
CAJUN CONTRACTORS & ENGINEERS INC., et al., Defendant-Appellant.
No. 86-956.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
*1011 John P. Navarre, Oakdale, for plaintiff-appellee.
Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Dee D. Drell, Alexandria, for defendant-appellant.
Stafford, Stewart & Potter, Russell L. Potter, Alexandria, for defendant-appellee.
Before FORET, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Plaintiff, Roy Raymond Cloud (Cloud), on July 7, 1984, injured his knee in a work-related accident while employed by Cajun Contractors & Engineers (Cajun). Worker's compensation benefits were paid until plaintiff's physician "released" plaintiff to work on October 16, 1984. Plaintiff decided to return to work, but with a different employer, Sheehan Pipeline Construction Company (Sheehan). He worked on the pipeline from November 11, 1984, until the completion of the job, December 20, 1984, when he was laid off. Plaintiff returned to Dr. Drez on January 7, 1985, complaining of incessant and progressive knee pain.
After some procedural posturing, all parties were joined in suit. The trial court ruled that no new injury occurred while plaintiff worked for Sheehan; further, it ruled that he did not sustain an aggravation of his old injury. The trial court found that plaintiff was totally and permanently disabled solely as a result of his injury while working for Cajun. Cajun was also cast with attorney fees in the amount of $5,000.00. The demands against Sheehan and its worker's compensation carrier, Home Insurance Company, were dismissed. Cajun and its worker's compensation insurer, National Union Fire Insurance Company (National Union), appeal citing several assignments of error.[1] We affirm in part; reverse in part; and remand.

FACTS
The trial judge, in his written reasons for judgment, found the following facts:
"This is a workmen's compensation suit filed by Roy Raymond Cloud for injuries sustained by him on July 7, 1984, while working for Cajun Contractors & Engineers, Inc. The injury was to his left knee which he bumped while getting off a backhoe. He was seen and treated by Dr. H.A. Nesom of Oakdale, who then referred him to Dr. David Drez, Jr., who in due course performed a [sic] arthroscopic examination and repair of the left knee. He (Cloud) was found to have a tear in the medial meniscus and some mild arthritic changes of his knee. He was then placed on physical therapy in Lake Charles and later in Oakdale.
On October 16, 1984, Cloud was released by Dr. David Drez as able to return to work.
On November 11, 1984, Roy Raymond Cloud went to work for Robert D. Sheehan and James H. Nolan doing business as Sheehan Pipeline Construction Company. A number of witnesses who were co-workers at Sheehan testified at court as to the type of work which petitioner *1012 was doing at the time that he worked for Sheehan which was from November 11, 1984 until December 29, 1984, about six (6) weeks.
The issue for the court to decide in addition to the usual issue of disability is whether petitioner is still suffering from his original injury or did he have another accident while employed by Sheehan Pipeline Construction Company.
The court will decide the issue of disability first. It is clear that plaintiff is disabled at the present time and the court finds as a fact that he has been disabled from December 29, 1984. The evidence was clear and convincing that Roy Raymond Cloud is permanently totally disabled from doing any type of work until another surgery is performed on his knee and perhaps even after the surgery. Under those circumstances he is considered permanently totally disabled and is entitled to workmen's compensation payments of $203.64 during the period of disability.
The more difficult question for decision is whether or not a new injury occurred or an aggravation of the old injury during the six weeks that plaintiff was working for Sheehan Pipeline Construction Company. After considering the testimony of the various witnesses, it is the opinion of this court that no new injury occurred to plaintiff, nor did he sustain an aggravation of his old injury while working for Sheehan. The Court finds as a fact that plaintiff was just not able to do the heavy work required by the job without having to endure substantial pain. Plaintiff never filed any claim or report of an injury while he was employed by Sheehan nor could he remember any separate incident when he suddenly felt that he had reinjured his knee. He filed no claim against Sheehan until just before this trial. None of his fellow workers could recall any separate occasion when he had indicated he had reinjured his knee. It is the opinion of this Court that petitioner never fully recovered from his original injury and more surgery is needed to correct his problems. According to Dr. Drez, no prognosis can be made before this additional surgery is done. Therefore, the suit and third party demand against Sheehan Pipeline Construction Company is denied.
Defendant Cajun Contractors & Engineers, Inc. and National Union Fire Insurance Company for a period of one year refused medical payments for medical examinations and treatment despite repeated demands by petitioner. Not until December, 1985, did the company agree to allow Dr. David Drez, Jr. examine and treat Roy Raymond Cloud. Additionally, repeated demands for workmen's compensation benefits were denied. The Court is satisfied that defendants were unreasonable and arbitrary in their refusal to pay for needed medical examination and treatments and to pay workmen's compensation benefits. If there was doubt in defendant's mind as to whether plaintiff was disabled it was their duty to have him examined at their expense by Dr. David Drez, Jr., or some other qualified physician. Defendants did neither and therefore under the provisions of R.S. 23:1201.1, they are liable for reasonable attorney fees (legal penalties were eliminated in the 1983 amendments) [sic]. The Court sets the attorney fees assessed against defendants at the sum of Five Thousand and No/100 ($5,000.00) Dollars.
Additionally, petitioner is entitled to legal interest on all past due installments (January 1, 1985 until the present time) and all costs of these proceedings."

Disability
Cajun's first three assignments can be more efficiently treated as a single issue: whether, and to what extent, Mr. Cloud was disabled.
LSA-R.S. 23:1221(1) and (2) as amended in 1983 provides the applicable law for disability benefits:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total. For injury producing temporary total disability of an *1013 employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
(b) For purposes of Subparagraph (2)(a) of this Paragraph, compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) Notwithstanding any judgment or determination that an employee is permanently and totally disabled, if such employee subsequently has or receives any earnings, including, but not limited to, earnings from odd-lot employment, sheltered employment, or employment while working in any pain, such employee shall not receive benefits pursuant to this Paragraph, but may receive benefits computed pursuant to Paragraph (3) of this Section, if applicable.
(e) The issue of permanent total disability provided herein shall not be adjudicated or determined while the employee is engaged in employment pursuant to R.S. 23:1226(G), but such employment shall not prevent adjudication or determination of the employee's right to any other benefits otherwise provided in this Chapter; however, the employee shall not by virtue of employment pursuant to R.S. 23:1226(G) be deprived of the right to determination or adjudication of permanent total disability herein at a time when he is not engaged in such employment."
As the statute mandates, in order to be adjudicated permanently and totally disabled, plaintiff must prove with clear and convincing evidence that he is physically unable to engage in any employment or self-employment. LSA-R.S. 23:1221(2)(c). The existence of pain suffered by the employee is not relevant to a determination of total permanent disability. Id.; Gaspard v. St. Paul Fire & Marine Insurance Company, 483 So.2d 1037, 1039 (La.App. 3d Cir.1985). The nature, character, location and availability of employment are similarly irrelevant. LSA-R.S. 23:1221(2). The record does not support the trial court's finding of permanent total disability in this case.
Plaintiff is a forty-eight (48) year old self described "laborer" with limited formal education. On cross-examination however, plaintiff admitted to being an experienced carpenter, cement finisher, and plumber. Plaintiff testified that when he worked for *1014 Cajun he slipped as he climbed on to a backhoe which he was about to operate. His left knee was injured. He saw Dr. Nesom who referred him to Dr. Drez. Dr. Drez performed orthoscopic surgery on the knee after which plaintiff underwent a regime of physical therapy for the leg. Plaintiff testified that his leg was "sore" but functional when he started work for Sheehan.
Plaintiff testified that he worked in persistent pain along a pipeline at Sheehan; however, he continued working until the job was completed, at which time he was laid off. He again saw Dr. Drez. Plaintiff testified that surgery was again scheduled, but that as of the trial date, no surgery had been performed. The knee injury causes pain and soreness. Plaintiff maintains that the pain prevents him from workingexcept at home. Plaintiff specifically denied having worked outside of his house. But on cross-examination, plaintiff admitted to working for a school board as a carpentry contractor. He is also self-employed in a seminal nursery business. Plaintiff admitted to being on the hiring list of his union hall. He has not worked out of the hall since the Sheehan job for lack of work.
We find that the trial court was manifestly erroneous in ruling that plaintiff proved by clear and convincing evidence that he was physically unable to engage in any employment. See LSA-R.S. 23:1221(2)(c). Of particular significance is the fact that plaintiff admitted to working during his period of disability. Further, Dr. Drez, Jr., Mr. Cloud's physician, did not indicate that plaintiff could not work. The doctor deferred to Mr. Cloud's representation of his ability to work. Until "re-arthroscopy" is performed, Dr. Drez would refrain from a categorical diagnosis of the nature of plaintiff's injury,[2] or a prognosis for plaintiff's future ability to work.
We agree with the trial court that plaintiff is to some degree disabled, but he was and is (at the time of trial) employed. Under LSA-R.S. 23:1221, plaintiff is neither temporarily[3] nor permanently totally disabled. Plaintiff appears to be entitled to supplemental earnings benefits under LSA-R.S. 23:1221(3). It is an understatement to say that the record is sketchy as to plaintiff's earnings since his release from Sheehan. Plaintiff conceded to earning $2,000.00 on one job. He did not disclose the earnings of his nursery business. The record is so incomplete as to the issue of earnings that we are unable to compute the supplemental earnings benefits if, in fact, any are due. For this reason, we must remand this suit to the trial court for adjudication of the issue.

New Accident While Working For Sheehan
Cajun's fifth and sixth assignments of error relate to whether plaintiff reinjured his knee or had his condition aggravated while employed at Sheehan.
The trial court found that "no new injury occurred to plaintiff, nor did he sustain an aggravation of his old injury while working for Sheehan." This factual finding is well supported by the record.
Plaintiff worked in pain while at Sheehan. He had "good days and bad days," but the pain was continuous. Plaintiff could not recall any particular incident that increased the pain nor could plaintiff's fellow workers recall any occasion that plaintiff indicated he had reinjured his knee. The trial court's finding that plaintiff simply had not fully recovered from his original injury with Cajun was not manifestly erroneous. This is not to say that a substantial question of fact did not exist.

Attorney's Fees
Cajun's fourth assignment of error asserts that the trial court was manifestly erroneous in finding that Cajun was liable *1015 for attorney's fees of $5,000.00 insofar as it was unreasonable and arbitrary in refusing to pay medical expenses and worker's compensation benefits.
Attorney's fees are available under LSA-R.S. 23:1201.2:
"Sec. 1201.2. Failure to pay claims; discontinuance; attorney's fees
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter."
We find that a bona fide dispute existed as to the causation of plaintiff's injury.
In refusing to reestablish benefits, Cajun properly relied on several facts: After plaintiff was "released" for work by Dr. Drez, Cajun discontinued worker's compensation payments. Plaintiff returned to work at a better paying job for over a month. While working for Sheehan, plaintiff walked in deep mud putting tremendous pressure on his knee. The suction created by the mud caused strain to the healthy knees of co-workers. Plaintiff testified by deposition that his leg once got stuck in the mud and upon pulling his leg out, he fell and his leg "kind of twisted." Cajun relied on this incident to show that an accident at Sheehan occurred and caused the injury. Cajun also validly disputed the extent of plaintiff's injury. As noted above, plaintiff was employed after his discharge from Sheehan.
Cajun and its worker's compensation carrier, National Union, reasonably refused to reestablish benefit payments. Cajun was not arbitrary. They should not be penalized for seeking a judicial resolution for this substantial factual question. See Fagan v. Delta Steel and Construction Company, 449 So.2d 1143 (La.App. 3d Cir. 1984). We reverse the trial court's award of attorney's fees.

Decree
For the above and foregoing reasons, the trial court's dismissal of Sheehan and Home Insurance Company is affirmed; the award of attorney's fees against Cajun and National Union is reversed; the judgment finding plaintiff permanently and totally disabled is reversed; and suit is remanded for a determination of whether, and how much, supplemental earnings benefits are due plaintiff from Cajun and National Union. Costs of this appeal are deferred until final disposition of this suit.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] Cajun's assignment of error reads as follows:

"IV. SPECIFICATIONS OF ERROR AND ISSUES FOR REVIEW:
A. It is respectfully submitted that the trial court erred:
1.
In finding that plaintiff was, is, and had been disabled under the meaning of the 1984 worker's compensation amendments;
2.
In finding plaintiff totally and permanently disabled;
3.
In finding plaintiff disabled at all under the meaning of the 1984 worker's compensation amendments;
4.
In finding that Cajun and National Union were unreasonable and arbitrary in their failure to pay compensation or medical benefits and in awarding attorney's fees;
5.
In finding that there had been no new accident or aggravation under current laws;
6.
In refusing to find Sheehan and its insurer liable for compensation and medical benefits instead of Cajun and its insurer.
B. The following additional issues will also be considered in this appeal:
7.
Is plaintiff's claim prescribed as against Sheehan and its insurer?"
[2] Dr. Drez opined that plaintiff's disability was rooted in either a tear in the medial meniscus or degenerative arthritis or a combination of both.
[3] While the burden of proof for temporary total disability benefits is by a preponderance of the evidence, plaintiff still had to show that he could not "engage in any self-employment or gainful occupation for wages." LSA-R.S. 23:1221(1); Price v. Fireman's Fund Insurance Company, 502 So.2d 1078 (La.1987).