603 So.2d 770 (1992)
Morris A. AUGUSTINE, III, Plaintiff-Appellee,
v.
PAUL WALL TRUCK LINE, INC. and Commercial Union Insurance Company, Defendants-Appellants.
No. 91-291.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1992.
Rehearing Denied August 13, 1992.
*771 Wilson & Walker, H. Gregory Walker, Jr., Alexandria, Paul Wall Truck Line/appellant.
Knoll, Roy & Spruill, Clark C. Roy, Marksville, for Augustine/appellee.
Before GUIDRY and YELVERTON, JJ., and COREIL, J. Pro Tem.
GUIDRY, Judge.
In this worker's compensation case, defendants, Paul Wall Truck Lines, Inc. and its worker's compensation carrier, Commercial Union Insurance Company (collectively referred to herein as Wall), appeal a judgment of the trial court finding plaintiff, Morris A. Augustine, III, permanently and totally disabled and awarding him $106.72 per week in compensation benefits plus 12% penalties on "the total amount of plaintiff's claim and loss" together with $7,500 in attorney's fees, medical expenses and costs. We reverse the judgment of the trial court in part and affirm in part.

FACTS
Augustine was employed by Wall to deliver sack and bulk fertilizer. His duties included loading, driving and unloading either a flat bed or hopper bed truck, depending on whether he was delivering bulk or bagged fertilizer. On January 28, 1986, after unloading an order of bulk fertilizer on a farm near New Roads, the conveyor chute, which plaintiff was in the process of securing to the side of the truck, slipped or fell striking plaintiff in the area of his head and shoulders. Augustine was found semi-conscious on the ground by the resident farmer and transported to Maringouin where he was treated and released by Dr. James O'Neal.
The next day plaintiff consulted Dr. Bryan McCann, who practiced general medicine in Marksville. Augustine complained of head, neck, shoulder and back pain. Examination revealed two lacerations on the forehead and numerous abrasions on the face, chest and back. X-rays of the head, neck, shoulders and back showed no abnormalities. A urinalysis that was performed was also normal. He was treated with narcotic analgesics, muscle relaxants and sedatives. Plaintiff returned to Dr. McCann on January 31, February 5, 12 and 26, 1986. During all visits his complaints were of general pain in the affected areas. He additionally complained of transient dizziness. Dr. McCann continued treating plaintiff with narcotics and muscle relaxants and added injections of two different steroids plus Antivert for the dizziness. As Dr. McCann could find no objective reasons for Augustine's continued complaints of pain, he referred him to Dr. Robert Po, an orthopaedic surgeon.
Dr. Po treated Augustine from February 28, 1986 through April 20, 1987. According to Dr. Po, during that period of time plaintiff's only symptoms were subjective complaints of pain. Plaintiff's complaints of pain were mainly in the head, back and neck, but at times included the shoulder(s), arm and leg. Beginning with plaintiff's December 5, 1986 visit and continuing with the December 12, 1986, January 6, February *772 11 and March 27, 1987 visits, Dr. Po was of the opinion that plaintiff could return to work on a light duty status. At the April 20, 1987 visit, Dr. Po told Augustine that he was "dismissing him to light work". No medications were prescribed at that visit. Dr. Po was never able to find any objective reason for plaintiff's complaints and restricted him to "light duty" based solely upon Augustine's subjective complaints. When questioned, in deposition, concerning the existence of objective evidence to substantiate plaintiff's complaints, Dr. Po stated:
"No, there's no objective evidence. There's no evidence of any joint problems in his extremities, no evidence of neurological involvement in his extremities to indicate any kind of central problem in his neck or back such as a disc, fracture or dislocation."
Shortly after Dr. Po began telling plaintiff he could return to work on light duty, Augustine began to again consult Dr. McCann with continued complaints of pain. Dr. McCann continued treating plaintiff symptomatically, i.e., with steroids and non-steroidal anti-inflammatories, narcotic and non-narcotic analgesics, muscle relaxants and sedatives, until August 1990, when the doctor's license to practice was restricted. Dr. McCann did not treat plaintiff subsequent to August of 1990.
In addition to his head, neck, shoulder and back complaints, Augustine also complained of jaw pain and the inability to fully open his mouth. This resulted in referral of plaintiff to Dr. Marks, a dentist specializing in temporomandibular joint disorders (TMJ). Dr. Marks did a diagnostic orthoscopy of the right and left TMJs and referred plaintiff to Dr. Gremillion for follow-up care. Dr. Gremillion treated plaintiff from December 22, 1987 through August 31, 1988, by the insertion and adjustment of a mandibular physiologic orthotic appliance. In a February 1989 report to plaintiff's attorney, Dr. Gremillion indicated that TMJ surgery was not indicated and that plaintiff's "prognosis could be better if he maintained regularly scheduled follow-up visits". Dr. Marks did not testify. Dr. Gremillion's report did not suggest that plaintiff's TMJ condition was in any way disabling.
Plaintiff was also sent to several orthopaedic surgeons for evaluation. The report most favorable to plaintiff's cause came from Dr. Bruce Razza of New Orleans. Upon examining Augustine, Dr. Razza was able to find "... no obvious spasm. No obvious neurologic defects". X-rays taken at Dr. Razza's order of plaintiff's cervical and lumbar spine were "... within normal limits". When questioned as to Augustine's diagnosis, Dr. Razza answered "... some cause of chronic pain in the neck and low back, and then in turn the arm symptoms likely were related to the neck and the leg symptoms likely related to the low back". Dr. Razza was of the opinion that further testing should be performed, he agreed that plaintiff could engage in employment subject to the following restrictions: "[no] activities involving repetitive lifting greater than fifteen to twenty pounds, maximum lift forty pound range. [No] repetitive bending, squatting, stooping, climbing, prolonged standing or sitting, and prolonged use of the upper extremities above the shoulder level".
Basically, Dr. Razza agreed with Dr. Po's assessment of Augustine, although placing slightly more severe restrictions on plaintiff's ability to work.
Dr. James Charles McDaniel of Lafayette issued the report most unfavorable to Augustine. In his deposition, the following colloquy took place:
"Q. Did you suspect him to be malingering?
A. Yes. And I use that, when somebody, when I don't think somebody's being truthful to me intentionally, then I would term that malingering. If I think it's a hysterical component or conversion reaction where they may be psychologically inept or whatever, I wouldn't call that malingering. I might call that possible hysteria or conversion reaction or hypochondriasis, something of that nature. In this case I felt it was voluntary.... I found nothing of an orthopaedic or neurological nature to even explain *773 the type of symptoms he was having, much less to create any disability. I thought that this man should've been able to return to normal activities which somebody at his age and for his size could do."
When asked if he would defer to Dr. Razza's opinion as to the need for further testing, Dr. McDaniel stated:
"I would not defer to Dr. Razza's opinion at any time, including in this case. I've never seen a case where he has not recommended further testing and generally surgery, so no, I wouldn't defer to his opinion."
Augustine was also evaluated by Dr. Robert Steiner.
Dr. Steiner basically agreed with Dr. McDaniel.
Plaintiff was also referred to Ms. Kaisa Adamson, a vocational rehabilitation specialist with Conservco. Ms. Adamson interviewed Augustine, did a job analysis of his former job, and met with Drs. McCann, Po and McDaniel to review plaintiff's restrictions and the job analysis she had prepared. Based on her report, Ms. Adamson stated that Ms. Shirley Dubroc, the manager of Paul Wall Trucking, offered to put Augustine back to work, at the same rate of pay, and within the limitations imposed by Dr. Po. Wall proposed transferring plaintiff from loading, driving and delivering bag and dry bulk fertilizer to the same job, but with liquid fertilizer. This would eliminate most of the lifting, stooping, bending, pushing and pulling and would be well within the restrictions placed upon plaintiff's activities by both Drs. Po and Razza. The record reflects that plaintiff was actually offered such employment which he refused without trial. Based upon Ms. Adamson's report and plaintiff's refusal to return to work, benefits were terminated December 5, 1988.
In his written reasons for judgment, the trial judge stated:
"Defendants entire defense seems to rest on their contention that plaintiff's complaints are contrived and that he is a malingerer. Their medical authority for this position is Dr. James McDaniel, who saw plaintiff only once, in August of 1988, and who, it appeared to the court, reached his opinion more from the fact that Dr. Razza was the treating physician rather than from any medical examinations of his own. If [sic] fact, Dr. McDaniel refused to even consider Dr. Razza's findings. Such a patently baised [sic] opinion cannot form the basis of refusing to provide Worker's Compensation Benefits to an injured worker.
Despite ... clear objective findings, defendant's continued in their refusal to pay benefits. The only reason discernible to the court for their refusal, based on the deposition of Dr. McDaniel, was that Dr. Razza was the treating physician.
The court does not pretend that Dr. Razza has not, in his time, recommended, and performed, his fair share of back surgeries. This fact, however, does not mean that he is always wrong in what he prescribed and/or diagnoses. In fact, in the present case, Dr. Razza prescribed further non-invasive testing procedures. The court cannot, and will not, allow prejudice in the medical and insurance community towards Dr. Razza to interfere with the necessary treatment of injured workers.
As stated previously, the court finds objective evidence of physical disabilities...."
The findings of fact by a trial judge are entitled to great weight and will not be disturbed on appeal except on a showing of manifest error. In the case sub judice, we find clear error in the trial court's findings and conclusions.
We observe that the record reflects that Dr. Razza was not plaintiff's treating physician. Dr. Razza saw plaintiff on only one or two occasions for purpose of evaluation only. The trial judge's finding that plaintiff was totally and permanently disabled was primarily based upon the findings of Dr. Razza and upon some perceived notion that the rest of the medical community is prejudiced against Dr. Razza. Dr. Razza did not state that he found plaintiff to be permanently and totally disabled. To the *774 contrary, Dr. Razza, for the most part, agreed with Dr. Po's assessment that Augustine could return to light work with restrictions.
The clear objective findings referred to by the trial judge in his reasons for judgment consist of Dr. Razza's findings of "hypermobility at C3-4 and 4-5 with extension"; and "a small left paracentral disc hernia" in the lumbosacral region. As to these findings, in deposition Dr. Razza stated:
"The only thing I noted was hypermobility at C3-4 and 4-5, with extension. In other words, with the view taken when the patient bends his head and neck backwards, the segments, the third disc level and the fourth disc level allowed the vertebrae to rock back a little more than one customarily sees, at just those two levels. Then in the lower back, again, they were essentially normal other than mild subluxation of the L4-5 and 5-S1 facet joints. In English, the lower two disc levels appear to be normal except that the joint articulation allowed for a little slippage ... [o]f one joint relative to the other."
Dr. Razza's aforestated findings do not represent clear objective evidence of disability. Further, at the close of plaintiff's examination of Dr. Razza, we find the following:
"Q. Okay. And, at the last time that you saw him, of course, whenthe date of September 12th, 1989, did you feel that he was a candidate to be able to be engaged in any gainful employment?
A. Well, employment that would conform to the restrictions we've discussed."
Additionally, Dr. Razza candidly admitted that the restrictions which he suggested on plaintiff's activities were in large measure based on plaintiff's subjective complaints.
There were two primary treating physicians in this case: Dr. McCann and Dr. Po (to whom plaintiff was referred by Dr. McCann). In McDonald v. New Orleans Private Patrol, 569 So.2d 106 (La.App. 4th Cir.1990), our brethren of the Fourth Circuit observed:
"It is well settled that the testimony of the treating physician is to be given more weight than the testimony of a physician who examines the patient only one or twice. However, the treating physician's testimony must also be weighed in light of other credible evidence. The weight to be afforded such testimony is largely dependent upon the physician's qualifications and the facts upon which his opinion is based. Schouest v. J. Roy McDermott, 411 So.2d 1042 (La.1982); Latiolais v. Jernigan Bros. Inc., 520 So.2d 1126 (La.App. 3rd Cir.1987); Walker v. Marcev, 427 So.2d 678 (La.App. 4th Cir. 1983), writ denied, 433 So.2d 182 (La. 1983); Vicknair v. Southern Farm Bureau Casualty Insurance Company, 292 So.2d 747 (La.App. 4th Cir.1974), writ denied, 296 So.2d 838 (La.1974)."
Dr. McCann offered no basis for his finding of total disability other than plaintiff's subjective complaints of continued pain. In fact, in deposition, Dr. McCann admitted "... symptomatic care was all I was giving the guy ... I didn't feel like I had anything I could offer curatively ..."
As stated previously, Dr. Po could find no objective evidence to substantiate the validity of plaintiff's subjective complaints and released him to "light duty" based solely upon Augustine's claims of continued pain.
La.R.S. 23:1221(2)(a) and (c) provide:
"(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
. . . . .
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in *775 Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment." In Cloud v. Cajun Contractors and Engineers, Inc., 517 So.2d 1010 (La.App. 3rd Cir.1987), a panel of this court observed:
"As the statute mandates, in order to be adjudicated permanently and totally disabled, plaintiff must prove with clear and convincing evidence that he is physically unable to engage in any employment or self-employment. LSA-R.S. 23:1221(2)(c). The existence of pain suffered by the employee is not relevant to a determination of total permanent disability. Id.; Gaspard v. St. Paul Fire & Marine Insurance Company, 483 So.2d 1037, 1039 (La.App.3d Cir.1985). The nature, character, location and availability of employment are similarly irrelevant. LSA-R.S. 23:1221(2)."
In Owens v. Georgia Pacific Corp., 535 So.2d 990 (La.App.2d Cir.1988), our brethren of the Second Circuit, with whom we agree, stated:
"A claimant may not prove permanent disability by asserting only a subjective belief that the claimant is unable to work. Johnson v. Monroe Pulpwood Co. Inc., 505 So.2d 862 (La.App.2d Cir. 1987). The claimant has the burden of proving to a legal certainty, and by a reasonable preponderance of the evidence, the nature and extent of a disability. Campbell v. Luke Const. Co., 465 So.2d 688 (La.1985); Barry, supra; Green, supra."[1]
Of the two treating physicians only Dr. McCann continuously maintained plaintiff was, and is, totally and permanently disabled and he frankly admitted that his determination was based solely upon claimant's subjective complaints. It was clear error to rely completely on the opinion of Dr. McCann, a physician whose license to practice general medicine has been restricted, in complete disregard of all other expert medical opinion that plaintiff was capable, at the very least, of returning to work with restrictions.
Plaintiff also argues and the trial judge found that "... plaintiff suffers from psychological deficiencies as to his injuries", i.e., a disabling traumatic neurosis. Plaintiff failed to present any psychiatric testimony or report to substantiate this alleged condition. Inasmuch as any such injury must be substantiated by competent psychiatric testimony (see Sinegal v. Louisiana Blasters, Inc., 546 So.2d 308 (La.App. 3rd Cir.1989), we find the trial judge was clearly wrong in finding that some psychological impairment contributed to plaintiff's disability.
In Underwood v. Southern Casualty Insurance Co., 525 So.2d 633 (La.App. 3rd Cir.1988), a five judge panel of this court stated:
"The 1983 amendments to the Worker's Compensation Act established a stricter standard for establishing permanent and total disability. The plaintiff must prove by clear and convincing evidence that he is unable to engage in any employment or self-employment, regardless of the nature of employment or self-employment. Beckham v. Commercial Union Insurance, 517 So.2d 886 (La. App. 3d Cir.1987)."
We find plaintiff failed to carry his burden of proving by clear and convincing evidence that he is totally and permanently disabled and the trial court clearly erred in concluded otherwise. We likewise conclude, for these same reasons, that plaintiff is not temporarily totally disabled.
*776 Since plaintiff was released to light duty, with some restrictions as to the physical aspects of his employment, we next address the question of his qualification for supplemental earnings benefits. In Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App.2d Cir.1991), our brethren of the Second Circuit observed:
"In order to be entitled to these SEB, an injured employee must be unable to earn 90% or more of the wages he received at the time of injury. LSA-R.S. 23:1221(3). The applicable burden of proof is by a preponderance of the evidence. The injured employee thus bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount. The employer may preclude these benefits by establishing that the employee is physically able to perform work that was either offered or tendered by the employer or any other employer or proven available to the employee in the employee's or employer's community or reasonable geographic region. An employee able to earn but not earning 90% or more of his former wages is not entitled to SEB. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La. 1989); Duncan v. State, DOTD, 556 So.2d 881 (La.App.2d Cir.1990), and Myers v. Stone Container, Inc., 556 So.2d 202 (La.App.2d Cir.1990), writ denied, 560 So.2d 30 (La.1990)."
Inasmuch as plaintiff's employer offered to put him back to work at a job within the limitations placed upon his activities by Drs. Po and Razza at the same rate of pay and he refused, we find no supplemental earnings benefits are due.
Accordingly, for the reasons stated, we find defendants properly terminated plaintiff's worker's compensation benefits on December 5, 1988. However, since plaintiff was only released to return to light duty, defendants remain responsible for his medical expenses.
Therefore, the judgment of the trial court is reversed and set aside insofar as it awards plaintiff, Morris A. Augustine III, worker's compensation benefits, penalties and attorney's fees and plaintiff's suit for such benefits is ordered dismissed. In all other respects, the judgment of the trial court is affirmed. Defendants are cast with all costs of this appeal.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Barry v. Western Electric Co., Inc., 485 So.2d 83 (La.App.2d Cir.1986), writ denied, 487 So.2d 441 (La.1986); Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App.2d Cir.1987).