460 So.2d 1156 (1984)
Sherlyn Dixon LONG, Plaintiff-Appellant,
v.
MOSES MOTOR HOTEL, INC. and Insurance Company of North America, Defendants-Appellees.
No. 16689-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
*1157 Bruscato, Loomis, & Street by C. Daniel Street, Monroe, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for defendants-appellees.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
HALL, Judge.
In this worker's compensation case, the appellant, Sherlyn Dixon Long, is appealing the trial court's finding that appellant failed to sustain her burden of proving a work-related accident causing disability. Because we find appellant carried her burden, the trial court's judgment is reversed.
The Factual Setting
On Wednesday, July 13, 1983, appellant was working at a Monroe motel where she had been employed as a maid for about a year. She worked mornings and usually left work between 1:00 p.m. and 2:00 p.m. each day. On the day of her injury, at approximately 12:45 in the afternoon, she was cleaning the next to last room assigned to her. According to her testimony, she was pushing a dresser back into place after having moved it away from the wall to clean behind it, when she felt a tingling sensation in her right shoulder. She did not stop her work at this point, but moved a bed away from the wall to vacuum under it when she felt a stronger tingling sensation in her shoulder as well as in her lower back. At this point she became alarmed, leaned against the bed, and called for help. When none came, she walked across the courtyard and asked another maid to help her replace the bed. Apparently, the maids were not supposed to move the furniture themselves, but appellant had done so in this instance. Appellant testified that she told the other maid that she hurt her back, but the other maid remembered appellant saying that she hurt her toe. After the bed was replaced, appellant went directly to her supervisor, Mrs. Marie Hall, and told her that she had injured her back. Although Mrs. Hall admitted that appellant reported a back injury, Mrs. Hall testified that she was unaware of the seriousness of the complaint because appellant did not act like she was really hurt. Appellant testified that after talking to Mrs. Hall, she went into a nearby room, called the receptionist, and asked her to place an outside call to appellant's home. When no one answered at home, appellant asked the receptionist to call appellant's sister at work. *1158 Although the sister was contacted, she could not leave her job. Appellant testified that at this point she was getting upset and called the receptionist again, this time telling her that she had hurt her back and needed someone to come get her. The receptionist told her not to get upset, and tried to call appellant's home again. This time appellant's husband answered and agreed to come pick his wife up at the motel. Appellant then went to the front of the motel, where the receptionist worked, to wait for her husband.
The receptionist no longer worked at the motel at the time of trial and was unavailable to corroborate appellant's testimony. However, appellant admitted that she did not tell anyone else at the motel of her injury before she was picked up by her husband a short time later. Mrs. Hall testified that the maids, including appellant, walked to the front of the motel together since their work was completed. Appellant did not recall whether Mrs. Hall was correct on this point.
Appellant's husband testified that he went to pick up his wife as soon as she called him and informed him of her accident. When he arrived at the motel, appellant told him she was having pain in her back and shoulder. Since they had no money, and already had unpaid medical bills, appellant's husband testified that he did not know what action to take. Appellant had never been injured on the job before, had never filed a worker's compensation claim, and was unfamiliar with the worker's compensation laws. The husband decided to seek the advice of an attorney with whom he was acquainted, and whose office was only a few blocks from the motel. The attorney suggested that appellant see a physician, and recommended a Dr. Chin. Appellant went to see the doctor immediately after leaving the attorney's office, but was turned away because she had no money. Appellant received no medical treatment that day, and testified to difficulty in sleeping that night.
The next morning, Thursday, July 14, appellant called her supervisor, Mrs. Hall, to tell her she would not be coming in to work. Appellant did not mention her injury at that time, nor did Mrs. Hall inquire as to the reason appellant was not coming to work. Mrs. Hall called back later that morning to find out if appellant had arranged for a replacement, and talked to appellant's husband. The testimony was conflicting as to whether injury was mentioned; Mrs. Hall said no injury was mentioned, while Mr. Long said he told Mrs. Hall that his wife had hurt her back and that he had to take her to the doctor. Mrs. Hall testified that she told Mr. Owen Moses, the proprietor of the motel, of appellant's claimed injury that same morning because Mr. Moses had not been at the motel on the day of the accident. Later Mrs. Hall changed her testimony to say that she told Mr. Moses of the injury on Friday morning, and that on Thursday she only told him that appellant was not coming to work. In their conversation on Thursday, Mr. Moses told Mrs. Hall to let appellant go from her job as a maid. Mrs. Hall then called appellant that evening and informed her that she was fired. The injury was not discussed in this conversation. Prior to this conversation, appellant had again sought medical treatment unsuccessfully.
On Friday, July 15, appellant was successful in obtaining treatment for her problems. She went to see Dr. Webb, a chiropractor, at the suggestion of her attorney. Dr. Webb testified that appellant was having severe pain in her right shoulder as well as lower back pain, that appellant's shoulder muscles were extremely spasmodic, and that his assistant had to help appellant change into a gown to have X rays made. Dr. Webb also testified that there was obvious swelling along the body of the trapezius muscle. After treating appellant, Dr. Webb placed her arm in a sling.
After leaving Dr. Webb's office appellant went to the motel to pick her weekly paycheck as well as her vacation check. She testified that she saw Mr. Moses at the motel, but did not mention her injury because she assumed he had been told by *1159 Mrs. Hall. Mr. Moses stated that he did not remember appellant's arm being in a sling. However, both appellant and Judy Huff, who drove appellant to the chiropractor and to the motel, testified that appellant was wearing the sling, and that Mr. Moses could see it. Mr. Moses did not inquire about appellant's arm or about appellant's absence from work, and did not discuss her termination from employment. Mr. Moses testified that he first learned of appellant's injury when Dr. Webb called him about responsibility for payment of medical bills later that day.
Despite her injury, appellant and her husband did not cancel a planned vacation trip to Las Vegas which began on July 21, 1983. However, appellant testified she did not do any of the driving on the trip, and did not drive an automobile at all until late September 1983.
Appellant saw Dr. Webb a total of 31 times during a treatment period beginning in July 1983 and ending in January 1984. During this period Dr. Webb performed both chiropractic manipulations and chiropractic adjunctive therapy. The adjunctive therapy mainly consisted of different forms of physical therapy including application of moist heat, application of cold, traction, and electrical stimulation. During part of the treatment period, appellant was given a cervical support, and during another part of the period was fitted with a lumbosacral support.
On August 31, 1983, at the request of appellee, appellant was examined by Dr. Douglas Brown, an orthopedic surgeon. Dr. Brown diagnosed appellant as having a lumbar strain as well as right rhomboid fibrositis, an inflammation of the muscles attached to the shoulder blade. Dr. Brown saw no reason why appellant could not return to work doing light duty if she wore a lumbosacral corset. In contrast, Dr. Webb felt appellant might be able to do some light duty work at the end of October 1983, but did not release appellant as fully recovered until January 11, 1984. Dr. Webb found appellant still had some complaints as late as November 28, 1983, and felt some time off beyond that date was warranted to prevent reinjury.
The Work-Related Injury
Although the trial court correctly observed that the jurisprudence favors a liberal interpretation of the law in favor of workers, and that ignorance of the refinements of reporting and asserting claims is understandable and excusable, the court went on to find that the facts of this case presented unusual and serious circumstances inconsistent with the accident and injury presented:
"The only single corroborating bit of evidence from any other person at the motel on the day of the alleged accident was the admission by the supervisor of plaintiff's somewhat casual remark about hurting her back, but that fact is totally inconsistent with her complaint of a toe injury to another employee, all of her later actions before leaving work, her telephone conversations with the supervisor the next day, her visit with the manager to pick up her checks, and, above all, the very severe shoulder injury observed by the chiropractor the next day. Moreover, the decision to go directly to a lawyer upon leaving work and the vacation trip previously planned seem highly unusual in comparison with the testimony of plaintiff and chiropractor concerning the injuries.
"While it is not unusual for back injuries to develop slowly and progress in degree, and while this is the general picture given by the chiropractor about the back in the instant case, that picture is totally different from plaintiff's description. She would have the Court conclude that the back injury manifested itself instantaneously with such severity that she was obliged to recline, then get help replacing the bed, then abandon her work and seek immediate medical help. If these were the facts and she were in obvious distress, it would seem that even a lay person would ask for employer assistance; and the record contains no evidence to support a conclusion that it would have been refused if so presented.

*1160 "A strain or sprain or shoulder muscles also frequently develops slowly into more severe symptoms following relatively minor ones at the time of injury. But here, the findings and opinions of the chiropractor the very next day are inconsistent with the plaintiff's testimony and actions relating to the accident and back complaints the previous day. Further, it seems incredible that such an injury and such symptoms could suddenly become manifest some 24 hours after an accident in which original symptoms were described only as a tingling in the arm and never mentioned to anyone else."
The trial court's reasons indicate that in practically all cases where inconsistent or conflicting testimony was presented, the trial court favored the testimony of appellee's witnesses. Nevertheless, all conflicting testimony aside, certain facts were established by uncontradicted evidence. First, the fact that appellant was moving furniture at the motel at the time in question is undisputed. Second, there is no dispute over the fact that appellant immediately reported her injury to her supervisor, and a short while later to her husband and to her attorney. Third, appellant not only sought medical treatment that same afternoon, but also sought treatment on the following days until treatment was obtained. Fourth, the findings of both the chiropractor and the orthopedic surgeon who examined appellant established that she did sustain injury to both her shoulder and her back. These findings were based not only upon appellant's complaints, but also upon objective signs and symptoms. Finally, no evidence was presented establishing any intervening cause for appellant's injuries.
The evidence outlined is sufficient to establish an injury caused by an accident occurring at work. Absent proof of any intervening cause, appellant's injuries are presumed to have been the result of the accident since before the accident the appellant was in good health, symptoms of her disabling condition commenced at the time of the accident and continuously manifested themselves thereafter, and the medical evidence shows a reasonable possibility of a causal connection between the accident and the disabling condition. Robertson v. Scanio Produce, 449 So.2d 459 (La. 1984); Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977).
Because this case is not one suggesting intervening causes for an obvious disability, or one presenting evidence of such slight injury as to make disability questionable, the only way the inconsistencies noted by the trial court could defeat appellant's claim would be to so substantially undermine the credibility of the uncontradicted evidence as to indicate that appellant's injury was feigned, or at least grossly exaggerated. As this court stated in Williams v. Bituminous Casualty Corporation, 131 So.2d 844 (La.App. 2d Cir. 1961):
"The principle that courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such conclusion is so well embedded in our jurisprudence as to preclude the necessity for specific citations. (Emphasis added)."
See also Caston v. Combined Insurance Company of America, 308 So.2d 287 (La. App. 1st Cir.1975).
While the inconsistencies noted are sufficient to create some suspicion, they do not provide the positive and convincing evidence necessary to defeat appellant's claim. The judgment of the trial court, finding that appellant failed to sustain her burden of proving a work-related accident causing disability is erroneous and must be reversed.
Appellant's Award
Appellant did not return to work until released by Dr. Webb on January 11, 1984. However, appellee contends that any worker's compensation payments due should be awarded only from July 13, 1983, the date of injury, to August 31, 1983, the date Dr. Brown indicated he felt appellant *1161 could return to light duty with the aid of a lumbosacral corset. We find that the lumbosacral corset, a device which restricts any bending of the back, and forces an individual to bend at the knees or hips, would have been impractical and burdensome in light of appellant's job which requires a great deal of stooping and bending. Appellant's disability continued until she was released by Dr. Webb and returned to work, and she is entitled to benefits from the date of the accident to that time.
Thus, appellant shall be awarded $1,586 in worker's compensation benefits for the period of July 13, 1983 through January 11, 1984, together with legal interest. This amount is based upon a minimum compensation rate of $61 per week. Appellant is also entitled to compensation for medical bills in the amount of $2,141.20 as prayed for by appellant, together with legal interest.
The inconsistencies noted by the trial court, although insufficient to defeat appellant's claim, are suspicious and are substantial enough to defeat appellant's claim for penalties and attorney fees. Appellee was not arbitrary and capricious in defending on the basis of the inconsistencies presented.
Decree
In accordance with the reasons set forth above, the trial court's judgment is reversed. Judgment is rendered in favor of plaintiff, Sherlyn Dixon Long, against defendants, Moses Motor Hotel, Inc. and Insurance Company of North America, in the amount of $1,586 for worker's compensation benefits from July 13, 1983 through January 11, 1984 at the rate of $61 per week, together with legal interest on each weekly payment from its due date until paid, and in the amount of $2,141.20 for medical expenses, together with legal interest thereon from date of judicial demand until paid, and for all costs of this proceeding including the costs of appeal.
Reversed and rendered.