565 So.2d 496 (1990)
Maggie BROWN, Appellant,
v.
MANVILLE FOREST PRODUCTS CORPORATION, Appellee.
No. 21537-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1990.
Writ Denied October 19, 1990.
*498 Bruscato, Loomis & Street by James L. Braddock, Monroe, for appellant.
Hudson, Potts & Bernstein by Jay A. Pucheu, Monroe, for appellee.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
In this workers compensation case, Maggie Brown, an employee for defendant, Manville Forest Products Corporation, sustained an internal injury to her left breast while in the course of her employment. After her treating physician released her, she saw another doctor for possible hypertension and discovered that she had a myeloproliferate disorder which sometimes develops into leukemia. She claimed that this blood disorder prevented her from returning to work. She began receiving workers compensation benefits from the date of the accident until her treating physician declared her able to return to work. Manville, which is self-insured for workers compensation purposes, ceased paying benefits and Brown eventually sued. The trial court found that Brown's disorder was not caused, accelerated or aggravated by her work-related injury and therefore rejected her claim. Brown appeals, urging the trial court erred in finding that the injury was not a legal cause of her disability and in failing to award penalties and attorneys fees. For the reasons which follow, we affirm in part, amend and render.

FACTS
On January 10, 1988, Brown was employed as a utility worker by Manville. She was checking dryers in the dry veneer department when she tripped and fell over an unrolled cable. The fall caused a large hematoma or blood clot in her left breast. Sammy Leamons, Brown's supervisor, took her to the hospital and surgery was performed by Dr. Larry Barr, a general surgeon. According to Dr. Barr, her left breast was four times its normal size. On the date of the accident, he evacuated approximately 600 ccs of blood from the injured breast. Brown remained hospitalized until January 22, during which time blood was regularly drained from the wound. After her release from the hospital, she continued to see Dr. Barr. On February 2, he noted that the hematoma was resolving, although Brown complained of "significant pain." He saw her three more times in February and reported that the breast was still enlarged and that she continued to complain of pain. On March 14 he noted improvement but that Brown continued to complain of pain. On March 29, Dr. Barr released Brown to return to work. He testified that he could not find any objective reason why she could not return to work. Dr. Barr last saw her on April 11. He reported that she complained of pain and had been hypertensive throughout the visits. Dr. Barr referred Brown to Dr. John Sampognaro to follow her for hypertension or high blood pressure. Dr. Barr testified that he did not refer Brown to Dr. Sampognaro for a continued study of her complaints of pain.
Dr. Sampognaro, a specialist in general internal medicine, first saw Brown on April *499 13. He reported that her blood pressure was borderline elevated and that she complained of pain involving her shoulders, upper arm, and left breast. He noted that her symptoms of pain could not be objectively explained. On April 15, he noted that a report revealed an abnormally high white blood count. Between April 15 and April 27 Brown had a bone marrow aspiration performed at St. Francis Hospital. This revealed that she suffered from a myeloproliferate disorder with proliferation of granulocytes and platelets. According to Dr. Sampognaro, this bone marrow disorder results in an overproduction of white cells and platelets. At the time of the bone marrow aspiration, Brown's platelet count was 741,000, the normal being 130,000 to 140,000, and the white blood count was 24,900, the normal being 7,800. On April 27, she saw Dr. Sampognaro and complained of weakness and shortness of breath upon exertion. On May 5, she told Dr. Sampognaro that she felt weak. A blood test revealed a white blood count of 48,600. On May 25, Dr. Sampognaro reported that she complained of pain in the posterior cervical region and shoulders. He gave her a prescription for pain and hypertension. X-rays taken on May 27 showed mild degenerative changes of the shoulder joint. Dr. Sampognaro last saw Brown on July 25 when she gave no new complaints and said that her neck and right shoulder pain were improved.
Defendant began paying Brown workers compensation benefits of $205 per week and all medical bills from the date of the accident. Relying on Dr. Barr's release to return to work, defendant terminated benefits on April 5, 1988. On February 8, 1989, after she had filed suit, Brown notified defendant that overtime pay had been omitted from its calculations and the correct rate of pay was $215.28 per week. On March 16, 1989, defendant paid the balance due as a result of the error.
On July 25, 1988, after filing a claim with the Workers Compensation office, Brown filed suit against defendant seeking past due benefits with legal interest and penalties and attorneys fees. The trial was held on May 30, 1989.
Brown testified that she had no problem with her left arm prior to the accident, but that since then she has lost use of it and it is getting worse. She testified at trial that Dr. Sampognaro was still treating her for her left arm, breast and side, although he stated in his deposition that he had not seen her since July 25, 1988. She also stated that she has trouble with her left hip. According to Brown, she is presently unable to return to work. She admitted that she has not tried to return to work since being released by Dr. Barr.
Dr. Barr, Brown's treating physician until April 11, 1988, testified by deposition that Brown should have been able to return to work on March 29, 1988. He found no objective reason to the contrary. He testified that he did not believe that the injury from the fall caused the blood disorder. After the release to return to work, Dr. Barr referred Brown to Dr. Sampognaro.
Dr. Sampognaro testified by deposition that only the blood disorder prevented Brown from returning to normal work. He stated that as long as she has the disorder, she would be predisposed to abnormal bleeding and, as a result, should not be involved in any physical activities. Dr. Sampognaro testified that the origin of the blood disorder is idiopathic, meaning it was unrelated to the injury from the fall. He also testified the hypertension was unrelated to the fall. He stated that Brown was diagnosed with hypertension approximately three years before the fall.
The trial court noted that Brown was injured while working in the course of her employment and during treatment by Dr. Sampognaro, Brown's myeloproliferate blood disorder was discovered and it prevented her from returning to work. It stated that the accident is presumed to have caused the disabling condition, but concluded that the defendant successfully rebutted this presumption through the medical testimony of Drs. Barr and Sampognaro. The court found that Brown's blood disorder was not caused, accelerated, or aggravated by her work-related injury. *500 Judgment dismissing her claims was signed and filed on August 2, 1989.
Brown has appealed, claiming the trial court erred in failing to find that the injury was a legal cause of the disability and in failing to award penalties and attorneys fees. She also complains that the trial court misapplied the burden of proof and presumption on the issue of causation and placed undue significance on the medical opinions as to causation. Finally, Brown contends that the court ignored the principle that the workers compensation law is to be liberally construed in favor of the plaintiff.

CAUSATION
Brown first contends that the trial court erred in finding that the disabling condition was not caused by the work-related accident.
In order to recover workers compensation benefits, an employee must sustain an injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031. The function of the "arising out of" requirement of R.S. 23:1031 is to assure that compensation will be awarded only for injuries causally related to the employment and fairly part of the employer's cost of business. Reid v. Gamb, 509 So.2d 995 (La.1987). The employee initially has the burden of establishing his disability and its causal relation with the employment accident by a preponderance of the evidence. Walton v. Normandy Village Homes Ass'n, 475 So.2d 320 (La.1985); Lucas v. Insurance Co. of N.A., 342 So.2d 591 (La.1977). The employee may establish a rebuttable presumption of causation by showing that before the accident he was in good health but commencing with the accident symptoms of the disabling condition appeared and continued to manifest themselves, provided there is either sufficient medical or circumstantial evidence to show a reasonable possibility of a causal connection. Walton v. Normandy Village Homes Ass'n, supra; Long v. Moses Motor Hotel, 460 So.2d 1156 (La.App. 2d Cir.1984). Once the disabled employee establishes the presumption of a causal relationship, the defendant assumes the burden of proving that it is more probable than not that the work-related injury did not accelerate, aggravate, or combine with a pre-existing disease or infirmity to produce his disability. Walton v. Normandy Village Homes Ass'n, supra. Whether the employee has carried his burden of proof and whether his testimony is credible are questions of fact to be determined by the trier of fact. It is a fundamental rule of appellate review that a trial court's factual determinations will not be disturbed on appeal in the absence of a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Loyd v. IMC Fertilizer, 557 So.2d 1078 (La.App. 2d Cir.1990).
The trial court found that Brown had established a rebuttable presumption of causation between the accident and the disabling condition. However, it also concluded that defendant rebutted the presumption through the medical testimony of Dr. Barr and Dr. Sampognaro. There was no conflict in the medical testimony. Both doctors agreed that the existence of the blood disorder, discovered after this on the job injury, was the cause of Brown's disability. Dr. Sampognaro testified that absent the blood disorder Brown could return to work. He stated that the blood disorder was not caused by trauma and was unrelated to Brown's on the job injury. Dr. Barr testified that he did not believe the injury from the fall caused the blood disorder. He also testified that it was possible that the blood disorder was present prior to the fall and it could have caused the hematoma to be worse. There was no evidence presented at trial by Brown to contradict the findings of Dr. Sampognaro and Dr. Barr. On the basis of this evidence, the trial court found that Brown's blood disorder was not caused, accelerated, or aggravated by the work-related injury and that the disorder did not combine with the injury to produce disability beyond March 29, 1988. It is possible that the pre-existing blood disorder may have worsened the bruising and swelling after the fall. But this injury was temporary and had completely healed by the time of Dr. Barr's *501 release. The trial court's conclusion is obviously supported by the evidence and is not manifestly erroneous.
Brown's contention that the court required her to bear too strict a burden of proof on the issue of causation and that it failed to apply the "reasonable possibility" test in determining causation is without merit. See Walton v. Normandy Village Homes Ass'n, supra. The court stated in its written reasons for judgment that the disorder was not known to exist prior to the accident and that it was discovered only after the accident. Although it did not mention the third part of the test, that there be a reasonable possibility of a causal connection between the accident and the disabling condition, the court afforded Brown a presumption of causation. Thus, the omission, if erroneous, was harmless. Brown was not required to bear too strict of a burden of proof on the issue of causation.
Brown also argues that the court ignored the factual circumstances of this case and attached "undue significance" to the medical conclusions of causation. We disagree. In the first place, the trial court did not discredit Brown's testimony regarding causation in favor of the doctors'. It accepted that she was unable to work after she discovered that she had the blood condition. However, she was not competent to testify as to the causal connection between the injury and the blood condition. Under the facts of this case, due to the internal nature of the disabling condition and the subjectiveness of Brown's complaints, medical testimony of physicians was essential in determining if the blood disorder was causally related to the injury. The testimony of treating physicians should be given great weight because their conclusions are based on repeated examinations and sustained observations of the patient. Loyd v. IMC Fertilizer, supra. The trial court's factual conclusion that it is more probable than not that the work-related injury did not cause, aggravate or accelerate the disabling blood disorder is not manifestly erroneous. For this reason, this assignment does not present reversible error.

PENALTIES AND ATTORNEYS FEES
Brown contends the trial court erred in refusing to award penalties and attorneys fees. She claims that defendant was aware that she continued to see Dr. Sampognaro after the release to return to work and that it made no effort to establish that her disability was caused by the injury. She also contends that penalties and attorneys fees should be awarded for defendant's failure to pay the correct amount of compensation despite having possession of her payroll records.
An employer or its insurer shall be liable for reasonable attorneys fees for terminating benefits when the action is arbitrary, capricious, or without probable cause. LSA-R.S. 23:1201.2; Lamette v. Morrison Assur. Co., 461 So.2d 351 (La. App. 2d Cir.1984). Whether or not a termination of or refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Scott v. Sears, Roebuck and Co., 406 So.2d 701 (La.App. 2d Cir.1981); Edwards v. Hartford Ins. Co., 445 So.2d 499 (La.App. 2d Cir.1984). If any installment of compensation without an order is not paid within the time provided in R.S. 23:1201, there shall be added to such unpaid installment a penalty of an amount equal to 12% thereof, unless the nonpayment results from conditions over which the employer or his insurer had no control or unless the employee's rights to such benefits have been "reasonably controverted" by the employer or his insurer. R.S. 23:1201 E; Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2d Cir.1987). The claimant's right to such benefits will be deemed to have been reasonably controverted if the employer or insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Green v. Jackson Rapid Delivery Service, supra. The trial judge's determination as to penalties and attorneys fees is ultimately one of fact and his finding should not be disturbed on appeal absent *502 manifest error. Lamette v. Morrison Assur. Co., supra; Harrison v. Chicago Mill and Lumber Co., 446 So.2d 843 (La. App. 2d Cir.1984).
On March 29, 1988, Dr. Barr reported to the defendant that Brown could return to work. Brown offered no medical evidence to defendant to counter this report. She only complained to Dr. Barr at this time that she could not work. Based on the report, defendant terminated benefits on April 5, 1988. Under these circumstances, there was a legitimate factual dispute as to Brown's right to further compensation. When a defendant's termination of workers compensation is based on competent medical evidence, its action is not arbitrary and capricious so as to warrant the imposition of penalties and attorneys fees. Crawford v. Al Smith Plumbing and Heating Service, Inc., 352 So.2d 669 (La.1977); Jackson v. Georgia Cas. and Sur. Co., 513 So.2d 530 (La.App. 2d Cir.1987). The trial court was not manifestly erroneous in refusing penalties and attorneys fees on this basis.
However, we believe the trial court erred in refusing to assess penalties on the discrepancy between what defendant paid in benefits and what it actually owed to Brown during the period of disability. R.S. 23:1201 has been interpreted to penalize payments that were incomplete for failure to include overtime wages in the calculation. Barton v. Wausau Ins. Co., 545 So.2d 1248 (La.App. 2d Cir.1989). Defendant has offered no proof that the discrepancy was beyond its control or that Brown's right to such benefits were "reasonably controverted." Defendant, in fact, had Brown's payroll records. An insurer cannot urge its own poor clerical work to escape penalties for nonpayment. Barton v. Wausau Ins. Co., supra; LaHaye v. Westmoreland Cas. Co., 509 So.2d 748 (La. App. 3d Cir.1987). Accordingly, we find that the trial court was plainly wrong in not awarding Brown penalties of 12% on the excess compensation not timely paid.
Our review of the record, however, reveals that defendant was not arbitrary or capricious in failing to make an accurate calculation of weekly wages. The discrepancy, which amounted to only about $10 per week, is small in comparison to the total weekly compensation rate. Furthermore, shortly after being notified of the discrepancy, defendant fully accounted for the miscalculation. Simple miscalculations are usually not held to be arbitrary and capricious conduct. Barton v. Wausau Ins. Co., supra; Campanella v. State through Dept. of Highways, 328 So.2d 798 (La.App. 1st Cir.1976). Cf. Green v. Provencal Tie Mill, 392 So.2d 722 (La.App. 3d Cir.1980); Darby v. Johnson, 118 So.2d 707 (La.App. 1st Cir.1960), where attorneys fees were awarded after the insurers refused to correct errors that were pointed out to them. Here, defendant compensated Brown after receiving notification of the error. For this reason, the trial court was not plainly wrong in denying Brown's request for attorneys fees.

CONCLUSION
For the reasons expressed, pursuant to LSA-R.S. 23:1201, the judgment is amended to award Brown penalties of 12% on the difference between the benefits actually paid and ultimately owed Brown during the period of disability. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to both parties.
AFFIRMED IN PART; AMENDED IN PART AND RENDERED.