633 So.2d 675 (1993)
Gregory THOMAS
v.
TONY'S SEAFOOD, LTD.
No. 92 CA 2303.
Court of Appeal of Louisiana, First Circuit.
December 29, 1993.
Writ Denied March 18, 1994.
*676 Arthur Cobb, Cobb & Cobb, Baton Rouge, for plaintiff-appellant Gregory Thomas.
M. Blake Monrose, Hurlburt, Privat & Monrose, Lafayete, for defendant-appellee Tony's Seafood, Ltd.
Before CARTER, GONZALES and WHIPPLE, JJ.
CARTER, Judge.
This is an appeal from a judgment in a worker's compensation case.

FACTS
On May 7, 1989, while performing his duties as a seafood boiler at Tony's Seafood, Ltd. (Tony's Seafood), plaintiff, Gregory Thomas, suffered an injury to his left shoulder. On that day, Thomas was attempting to move a large barrel of vinegar, when he felt a sudden popping in his shoulder, which was followed by pain.
From May 8, 1989, through at least June 22, 1989, Thomas was treated by Dr. C.A. Martello, a chiropractor. On June 28, 1989, Dr. Jack Loupe, orthopaedic surgeon, began treating Thomas for his shoulder injury. On July 20, 1989, Thomas underwent surgical excision of the distal end of his left clavicle. Thomas subsequently underwent a second surgical procedure for the injury to his shoulder on September 12, 1989.
On November 22, 1989, Dr. Loupe released Thomas to light duty work, noting that Thomas's surgical wound was close to healing. A little more than a month later, on December 29, 1989, Dr. Loupe released Thomas to regular duty work without any restrictions.
Tony's Seafood paid Thomas more than thirty-one weeks of compensation benefits totalling $5,817.39 and paid all medical expenses totalling $11,413.45. However, Thomas's worker's compensation benefits ceased after November 22, 1989.
On October 4, 1990, Thomas filed a Disputed Claim for Compensation against his employer, Tony's Seafood. Trial was held on March 11, 1992. At trial, Thomas claimed that he was entitled to supplemental earnings benefits (SEB), pursuant to LSA-R.S. 23:1221(3), because the injury he suffered while employed at Tony's Seafood resulted in an inability to earn at least ninety percent (90%) of his previous wages.
After trial, counsel for both parties agreed that Thomas's compensation benefits had been miscalculated and that Thomas had been underpaid $52.14 per week or $1,646.06. On June 18, 1992, the hearing officer rendered judgment in favor of Thomas "in so far as his weekly indemnity benefits were miscalculated." The judgment, rendered in favor of Tony's Seafood in all other respects, denied all other claims by Thomas.
From this adverse judgment, Thomas appealed, assigning the following specifications of error:[1]
1. The trial court erred in not giving greater weight to the testimony of Mr. Thomas and Dr. Finn and in not finding that Greg Thomas is disabled and entitled to compensation benefits.
2. The trial court erred in not finding that Tony's Seafood and its compensation *677 carrier were not arbitrary and capricious in miscalculating and terminating benefits.

WEIGHT GIVEN TO TESTIMONY OF DR. FINN
Thomas contends that the hearing officer erred in not giving greater weight to the testimony of Dr. Thomas Finn.
Generally, the testimony of the treating physician should be given greater weight because his conclusions are based on repeated examinations and sustained observations of the patient. Mazoch v. Employers Casualty Company, 514 So.2d 1184, 1185 (La.App. 1st Cir.1987), writ denied, 517 So.2d 812 (La.1988).
Thomas was first examined by Dr. Thomas Finn, a chiropractor, on October 21, 1991, almost two and one-half years after the work-related accident. Although the record does not include the testimony of Dr. Finn, his reports indicate the nature and extent of Thomas's injury and disability.
In the instant case, assuming that Dr. Finn was a treating physician, we are unable to determine whether the hearing officer gave any greater weight to the reports of Dr. Finn than he did to the testimony of the other physicians who examined and/or treated Thomas. In rendering his decision, the hearing officer simply noted that credibility was a key factor in his determination without further elaboration. Therefore, we cannot say whether or not greater weight was accorded to Dr. Finn's reports.

DISABILITY
In a worker's compensation proceeding, a claimant bears the burden of demonstrating by a preponderance of the evidence that an employment accident resulted in disability. Britton v. Morton Thiokol, Inc., 604 So.2d 130, 134 (La.App. 2nd Cir.1992); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174, 1178 (La. App. 2nd Cir.1991); Moore v. Mason & Dixon Tank Lines, 540 So.2d 525, 528 (La.App. 1st Cir.), writ denied, 541 So.2d 1390 (La. 1989). Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Lubom v. L.J. Earnest, Inc., 579 So.2d at 1178-79. If the evidence leaves the probabilities evenly balanced or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Dunckelman v. T. Baker Smith & Sons, Inc., 447 So.2d 26, 28 (La.App. 1st Cir.1984).
A claimant's disability is presumed to have resulted from an accident if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves, providing either that there is sufficient medical evidence to show there is a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. Lubom v. L.J. Earnest, Inc., 579 So.2d at 1179.
The finding of disability within the framework of the worker's compensation law is a legal rather than a purely medical determination. Pollock v. Louisiana Insurance Guaranty Association, 587 So.2d 823, 825 (La. App. 3rd Cir.1991); Manson v. City of Shreveport, 577 So.2d 1167, 1169 (La.App. 2nd Cir.), writ denied, 580 So.2d 928 (La. 1991). Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Moore v. Mason & Dixon Tank Lines, 540 So.2d at 529.
Ultimately, the question of disability is a question of fact. Pollock v. Louisiana Insurance Guaranty Association, 587 So.2d at 825. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). For an appellate court to reverse a trial court's factual finding, it must find that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly *678 wrong. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record, in its entirety, to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882-83.
Such deference to the findings of a trial court with regard to facts and credibility also applies to a worker's compensation case. Ducote v. J.A. Jones Construction Company, 471 So.2d 704, 706 (La.1985); Pollock v. Louisiana Insurance Guaranty Association, 587 So.2d at 825; Stewart v. Ormond Country Club, 542 So.2d 658, 659 (La.App. 5th Cir.), writ denied, 544 So.2d 408 (La.1989).
In the instant case, the evidence presented at the hearing consisted of the medical records and reports, the live testimony of Thomas, and the deposition testimony of Dr. Jack Loupe and Dr. Stephen Wilson.
Dr. Jack Loupe, orthopaedic surgeon, was Thomas's primary treating physician immediately following his May, 1989, injury. In his deposition testimony and medical reports, Dr. Loupe noted that on June 28, 1989, he examined and began treating Thomas for complaints of left shoulder pain resulting from a work-related injury. Dr. Loupe diagnosed Thomas with a left clavicle joint sprain and recommended surgery. On July 11, 1989, Dr. Joseph Laughlin, an orthopaedic surgeon, confirmed the diagnosis and concurred with Dr. Loupe's recommendation of surgery.
On July 20, 1989, Thomas underwent surgical excision of the distal end of his left clavicle. On follow-up visits, Dr. Loupe noted that the surgical wound was healing very slowly. On September 12, 1989, Thomas underwent debridement and secondary closure of the surgical wound.
Dr. Stephen M. Wilson, orthopaedic surgeon, also treated Thomas. His deposition testimony and his medical reports reveal that he examined Thomas on November 17, 1989, and found that the debridement was healing satisfactorily, but that there was still a small area of drainage present. Dr. Wilson indicated that Thomas's disability would be "minimal" and that he could return to light duty work. Dr. Wilson estimated that Thomas would suffer a 10% anatomical impairment to the upper left extremity, but noted that Thomas should suffer no functional impairment and should be able to do anything he wants to do.
Dr. Loupe advised Thomas that he could return to light duty work on November 22, 1989. Thomas's testimony regarding his employment with Tony's Seafood between November 1989 and January 1990 is somewhat confusing; however, certain facts can be gleaned from the record. Tony's Seafood offered Thomas a light duty counter position. Thomas refused to accept the light duty job. Thereafter, Thomas apparently returned to work at Tony's Seafood, but got into an argument with a co-employee and was terminated. However, he and his employer later reconciled, and he returned to work again. Subsequently, Thomas ceased working at Tony's Seafood because he was experiencing pain.
On December 29, 1989, Dr. Loupe released Thomas to unlimited activities with his left shoulder. Dr. Loupe estimated that Thomas would have an anatomical impairment rating of 15% to the left shoulder (or 7.5% left upper extremity impairment or 3.75% whole body impairment). However, Dr. Loupe explained that the permanent impairment is not equivalent to functional impairment:

*679 He would probably not notice impairment of function and not be disabled particularly from this. It's an alteration of the anatomy, however, and probably some degree of muscle atrophy will have occurred over the years or months that he had problems. But I don't think he would notice any functional impairment and it wouldn't disable him from any occupation, that I know of. (Emphasis added).
In January and early February of 1990, Thomas worked for an Exxon subcontractor, Service Paint, picking up debris following an explosion at the Exxon plant. He worked forty hours per week for approximately four weeks, earning $6.00 per hour, until he was laid off.
On January 17, 1990, Thomas returned to Dr. Loupe with complaints of pain in the left side of his neck, posterior shoulder, and arm. Examination showed a full range of motion in the left shoulder, without pain, and a full range of motion in the cervical spine, with some pain in the left posterior paracervical area with extremes of motion. Dr. Loupe recommended that Thomas undergo an MRI of his cervical spine, but noted that "the patient is not disabled." A subsequent MRI revealed normal results and did not show evidence of degenerative cervical disc disease.
On February 22, 1990, Dr. Wilson again saw Thomas and, after examining him, saw no reason why Thomas could not return to any type of activity he desired. Although Dr. Wilson indicated that he did not see the necessity of further medical treatment, Thomas did not return to work, claiming that he was still experiencing pain.
On March 2, 1990, an EMG was performed on Thomas, which showed evidence of ulnar nerve entrapment at the left elbow. After reviewing the results of the EMG, Dr. Loupe could not establish any connection between the ulnar nerve problem and Thomas's prior shoulder injury. Dr. Loupe indicated that ulnar nerve problems are most often caused by pressure from leaning on the elbow or from a blow to that area. Dr. Loupe suggested that Thomas return to regular work because it "would not be detrimental to his condition."
Dr. Wilson stated that Thomas was not experiencing ulnar nerve problems when he examined him in February of 1990. However, Dr. Wilson indicated that he had no reason to believe that the ulnar nerve problem resulted from Thomas's shoulder injury sustained while employed with Tony's Seafood.
Thomas did not return to work again until July of 1991, when he worked for Partex mixing chemicals in a laboratory. He worked forty hours per week, for approximately six weeks, earning $6.25 per hour. Thomas claims that he performed no other work in 1991 because his pain continued to worsen.
On October 21, 1991, Dr. Thomas Finn, chiropractor, examined Thomas and found him to have a 20% permanent whole body impairment. Although the record does not include the testimony of Dr. Finn, one of his reports indicates that Thomas suffered from a moderate and severe sprain and strain of the cervical spine and left shoulder, respectively, which were "severely disabling him."
At trial, Thomas testified, regarding his ability to work, as follows:
Q. And when do you think you're going to be okay?
A. I don't think I'll ever be okay; the way I be feeling most of the time.
Q. Well, Greg, you're an awful young man, you don't want to go through life crippled for the rest of your life.
A. Well, I had a bone removed. I can't help it.
Q. Some people have arms cut off and they can still work. Do you think you can do something?
A. I can do some type of work.
Q. Can you
A. As far as me lifting up on things, I can't do it.
Q. Can you do the boiler work that you were doing?
A. No. That's pounds.
Q. You can't do that?
A. I have to pull that all day, back and forth.

*680 Q. Well, you could do easy work, couldn't you, like the kind of work if you could get it?
A. Uh-huh.
Q. And/or pick up trash if you could get that kind of work?
A. It all depends. Because if I work so much, when I go home, I feel the pain.
Although the evidence and testimony in the record shows that Thomas sustained a work-related shoulder injury in May of 1989, the medical evidence reveals that the injury healed in late November, 1989. In December of 1989, Thomas was released to return to regular duty by both Dr. Loupe and Dr. Wilson. Furthermore, there is no evidence, medical or otherwise, that the ulnar nerve entrapment, which later developed, was reasonably causally connected to the prior work-related shoulder injury or that the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists. See Lubom v. L.J. Earnest, Inc., 579 So.2d at 1179. Therefore, the record does not establish that Thomas had a work-related disability after November of 1989, when his compensation benefits were terminated.
A review of all of the testimony and documentary evidence in the record convinces us that a reasonable factual basis exists for the hearing officer's conclusion that Thomas failed to satisfy his burden of proof. In order to be entitled to SEB, the claimant bears the burden of proving by a preponderance of the evidence that a work-related injury has disabled him, such that he is unable to earn ninety percent (90%) or more of the wages he received at the time of the injury. Augustine v. Paul Wall Truck Line, Inc., 603 So.2d 770, 776 (La.App. 3rd Cir.), writ denied, 608 So.2d 193 (La.1992); Tassin v. CIGNA Insurance Company, 583 So.2d 1222, 1225 (La.App. 3rd Cir.1991). The employer may then preclude SEB by proving that the employee is physically able to perform work that was offered to the employee or was available to the employee in the employee's or employer's community or reasonable geographic location. Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1008-09 (La.1989). An employee who is able to earn but not earning 90% or more of his former wages is not entitled to SEB. Augustine v. Paul Wall Truck Line, Inc., 603 So.2d at 776.
In the instant case, the evidence shows that the physicians who treated Thomas's initial shoulder injury determined that after November, 1989, Thomas was able to return to work with no limitation. Moreover, his subsequent complaints of ulnar nerve entrapment were not shown to be causally connected to his shoulder injury. As such, Thomas failed to satisfy his burden of proving that he suffered a continuing disability which rendered him unable to earn 90% or more of his pre-accident wages. Further, Thomas's employer offered to put him back to work in light duty and in his former employment, but Thomas refused to return. See Augustine v. Paul Wall Truck Line, Inc., 603 So.2d at 776. Therefore, we agree with the hearing officer that Thomas is not entitled to any supplemental earnings benefits.

ATTORNEY'S FEES
Thomas contends that he is entitled to an award of attorney's fees and that the hearing officer erred in failing to find Tony's Seafood and its compensation insurer arbitrary and capricious in the miscalculation and termination of his compensation benefits.
LSA-R.S. 23:1201.2 provides, in pertinent part, as follows:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between *681 the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.
Generally, under LSA-R.S. 23:1201.2, an employer or a worker's compensation insurer is liable for reasonable attorney's fees for terminating benefits when the action is arbitrary, capricious, or without probable cause. Brown v. Manville Forest Products Corporation, 565 So.2d 496, 501 (La.App. 2nd Cir.), writ denied, 567 So.2d 1127 (La.1990); Winn v. Thompson-Hayward Chemical Company, 522 So.2d 137, 144 (La.App. 2nd Cir.1988). The court in Winn v. Thompson-Hayward Chemical Company, 522 So.2d at 145, held that attorney's fees under LSA-R.S. 23:1201.2 may only be assessed against an insurer or a self-insured employer. Whether or not a termination of or refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Brown v. Manville Forest Products Corporation, 565 So.2d at 501. The trial judge's determination as to penalties or attorney's fees is ultimately one of fact, and such findings should not be disturbed on appeal absent manifest error. Brown v. Manville Forest Products Corporation, 565 So.2d at 501-02.
In the instant case, Thomas filed the instant suit for worker's compensation benefits solely against his employer, Tony's Seafood. Tony's Seafood's worker's compensation insurer was never sued or made a defendant. Under LSA-R.S. 23:1201.2 as interpreted by our brethren of the Second Circuit in Winn v. Thompson-Hayward Chemical Company, 522 So.2d at 145, Tony's Seafood could not be cast with attorney's fees. However, we do not reach this issue since we find that Thomas failed to show that Tony's Seafood was arbitrary, capricious, or without probable cause in the miscalculation of his worker's compensation benefits or in the termination of his worker's compensation benefits.

A. MISCALCULATION OF BENEFITS.
Our review of the record reveals that Tony's Seafood was not arbitrary or capricious in failing to make an accurate calculation of weekly wages. The discrepancy, which amounted to $52.14 per week, totalled $1,646.06 for the period from May, 1989 through November 22, 1989. Thomas did not inform his employer that the benefits he received were less than the statutorily required payment. Neither of the two attorneys who represented Thomas made a claim for underpayment prior to the trial of the matter. After being notified of the discrepancy at the trial, Tony's Seafood examined its records, calculated Thomas's average weekly wage based upon the four-week period immediately preceding his injury, and fully accounted for the miscalculation. Simple miscalculations are usually not held to be arbitrary and capricious conduct. Brown v. Manville Forest Products Corporation, 565 So.2d at 502. There is nothing in the record to support a finding that Tony's Seafood was arbitrary or capricious in the miscalculation of the worker's compensation benefits, and the hearing officer was not clearly wrong in denying Thomas's request for attorney's fees.

B. DISCONTINUANCE OF BENEFITS.
Because of our finding that the hearing officer did not err in finding that Tony's Seafood properly terminated Thomas's benefits in November, 1989, his refusal to award attorney's fees due to the discontinuance of benefits is likewise proper.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. Thomas is assessed with all costs of this appeal.
AFFIRMED.
NOTES
[1] At the trial of this matter and at oral argument, counsel for Thomas argued that the failure of Tony's Seafood to respond to requests for admission resulted in the admission of certain facts regarding Thomas's average weekly wage. The hearing officer refused to deem the failure to respond as an admission. Thomas did not assign this evidentiary ruling as error. Therefore, this issue is not before us on appeal.