635 So.2d 269 (1994)
Erving ALEXANDER, Jr., Plaintiff-Appellant,
v.
B.F. TRAPPEY & SONS, INC., et al., Defendants-Appellees.
No. 93-549.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1994.
Randall Scott Iles, Lafayette, for Erving Alexander, Jr.
James T. McManus, Lafayette, for B.F. Trappey & Sons, Inc., et al.
Before DOUCET, YELVERTON and SAUNDERS, JJ.
SAUNDERS, Judge.
In this workers' compensation case, plaintiff and appellant, Erving Alexander, Jr., appeals from a trial court judgment which denied his request for compensation and accompanying penalties and attorney's fees after March 15, 1989. The trial court additionally denied his request for payment of medical bills incurred by Alexander after March 15, 1989. The trial court also denied payment of a $300.00 medical bill to Dr. Friedberg, which had been incurred prior to March 15, 1989. Finally, the trial court, although awarding Alexander $3,418.74 for the underpayment of his compensation benefits from March 9, 1988, through March 15, 1989, failed to award plaintiff penalties and attorney's fees on this amount.
*270 We reverse that portion of the trial court's judgment which denied payment of Dr. Friedberg's bill. Additionally, we amend the judgment of the trial court and award Alexander twelve (12%) penalties on the $3,418.74 unpaid compensation due and $4,000.00 for attorney's fees.

FACTS
On March 9, 1988, Alexander injured his back and neck while employed by defendant-appellee, B.F. Trappey & Sons, Inc. Trappey's workers' compensation insurer was American Mutual Insurance Company. Alexander was injured when he fell from a platform onto a concrete floor while emptying trash. Alexander testified that he was treated at the emergency room of Hamilton Hospital by Dr. James Fournet who prescribed physical therapy, muscle relaxers and pain killers. These records were not entered into evidence.
Alexander was then referred to Dr. Louis Blanda, an orthopedic surgeon, who first saw plaintiff on April 7, 1988. Plaintiff was treated by Dr. Blanda through January 30, 1989. Alexander underwent a bone scan, CT Scan, physical therapy, numerous MRI's, a neurological evaluation, nerve conduction studies and finally entered a work-hardening program. All test results were essentially normal. Although spasm was noted in his back and neck, this condition resolved itself early in his treatment.
Alexander began a work-hardening program on January 24, 1989, which he attended for two days. Paul Fontana, the occupational therapist at the work-hardening center, testified that Alexander wanted to quit on his third day but was convinced by his attorney that he should continue. Alexander testified that on January 27, 1989, he fell down the stairs at the work-hardening center. He was taken to the emergency room at Lafayette General Medical Center and treated by Dr. Dan Murphy.
Dr. Murphy testified that Alexander would not or could not pinpoint his pain but instead, indicated that his back hurt everywhere that Dr. Murphy touched. Dr. Murphy noted no spasm, bruising or swelling or other objective findings and stated that he could find no evidence of an acute injury.
On January 30, 1989, Alexander returned for his last visit with Dr. Blanda. Dr. Blanda found nothing orthopedically wrong with Alexander and suggested that he see a psychologist and get an MMPI to see what was going on with him. Dr. Blanda also x-rayed Alexander to make sure he had not fractured his back in his unwitnessed fall at the work-hardening center. The X-rays revealed no injury.
It was stipulated at trial that on March 6, 1989, American Mutual, Trappey's workers' compensation insurer, received a letter from Dr. Blanda dated March 2, 1989. In that letter, Dr. Blanda stated that he thought that many of Alexander's problems were psychological but saw no reason why Alexander could not return to gainful employment.
It was also stipulated at trial that Alexander was seen by a psychologist, Dr. Friedberg, on February 13, 1989. However, American Mutual did not receive Dr. Friedberg's report prior to terminating Alexander's benefits. In fact, the first communication American Mutual received from Dr. Friedberg was his bill in October of 1989.
Based upon the written findings of Dr. Blanda and the normal diagnostic test results, the decision to terminate plaintiff's compensation benefits was made on March 10, 1989, effective March 15, 1989. The insurer authorized no further treatment.
Alexander returned to work in November of 1991 through June of 1992 for Bostic Concrete in Lafayette, Louisiana. He was terminated after seven (7) months for leaving work to repair his automobile. Alexander testified that he had a pre-employment physical with Bostic and lied on his Bostic application regarding prior injuries because he was afraid he would not get hired.
Joseph Charles, Alexander's supervisor at Bostic, testified that he fired Alexander after five warnings for not doing his job and for missing work without an excuse. He testified that Alexander never complained of pain or acted like he was in pain during the time he observed Alexander at Bostic Concrete. At the time of trial, January 5, 1993, Alexander *271 had not been employed since June of 1992.

ASSIGNMENTS OF ERROR
(1) The trial court erred in failing to assess penalties and attorney's fees for unexcused underpayment of temporary total disability benefits paid to Alexander prior to March 15, 1989.
(2) The trial court erred in failing to award temporary total disability benefits after March 15, 1989.
(3) The trial court erred in failing to award medical expenses for the unpaid medical expenses of Dr. Friedberg, Dr. Stephen Goldware, St. Mary's Imaging and various chiropractic bills.

PENALTIES AND ATTORNEY'S FEES BEFORE MARCH 15, 1989
The trial court awarded Alexander $3,418.74 in past due benefits. The trial court found that, under LSA-R.S. 23:1021, the plaintiff was a full-time worker and awarded the difference between the benefits actually paid and ultimately owed Alexander between March 9, 1988, and March 15, 1989. The defendants have not assigned this as error and as such, this finding is not before the court. However, although the trial court stated that "the defendant did not offer any evidence to rebut the plaintiff's evidence" that he was a full-time employee, the trial court failed to award Alexander penalties and attorney's fees on this amount.
We find that this omission is clear error on the part of the trial court. As stated in Brown v. Manville Forest Products Corp., 565 So.2d 496, 501 (La.App. 2d Cir.), writ denied, 567 So.2d 1127 (La.1990):
"If any installment of compensation without an order is not paid within the time provided in R.S. 23:1201, there shall be added to such unpaid installment a penalty of an amount equal to 12% thereof, unless the nonpayment results from conditions over which the employer or his insurer had no control or unless the employee's rights to such benefits have been `reasonably controverted' by the employer or his insurer. R.S. 23:1201 E; Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2d Cir.1987)."
In this case, neither the employer nor its insurer offered any proof that the error in its calculation of Alexander's compensation benefits was beyond its control or that Alexander's right to such benefits was "reasonably controverted." "An insurer cannot urge its own poor clerical work to escape penalties for non-payment." Brown, supra, 565 So.2d at 502. Accordingly, we award plaintiff penalties of twelve (12%) percent on the unpaid compensation benefits owed between March 9, 1988, and March 15, 1989.
We also find that under LSA-R.S. 23:1201.2, the defendants are liable for reasonable attorney's fees in failing to pay Alexander the proper compensation rate without probable cause. The record reflects that as early as April 11, 1988, in the employer's supplemental report of injury, it is noted that Alexander's wages should be calculated at $6.28 per hour for forty (40) hours. Additionally, three letters were written, July 15, 1988, August 2, 1988, and March 22, 1989, from Alexander's prior attorney to American Mutual asking that Alexander be paid the proper compensation rate. American Mutual acted in an arbitrary and capricious manner in failing to correct its error after receiving notification. For this reason, we award attorney's fees in the amount of $4,000.00.

DISABILITY AFTER MARCH 15, 1989
Alexander contends that he is entitled to temporary total disability benefits because of a neurotic disorder caused as a consequence of his work-related accident. The trial court found that he had failed to establish, by a preponderance of the evidence, any traumatic neurosis or any physical problems that would prevent him from working. The trial court also noted that Alexander did, in fact, return to work doing heavy labor from November 1991 through June 1992.
Alexander relies upon the psychological report of Dr. Friedberg to establish his psychological problems. Alexander saw Dr. Friedberg on February 13, 1989, for psychological testing on referral from Dr. Blanda. Dr. Friedberg did not testify at trial, by deposition or otherwise, but his two page report was submitted into evidence.
*272 Dr. Friedberg's evaluation can be synopsized as follows:
"Results of the MMPI were consistent with what is called a `old-fashioned somatizer.' These patients are described as neurotic, depressed, clinically anxious, and display a fatigue syndrome (loss of interest, apathy, and [tension]). Somatic symptoms often occur instead of affective signs. Patients generally demonstrate somatic over-concern manifested by hypersensitivity to minor dysfunction and numerous complaints without adequate physical pathology. They typically have a chronic and unabating history of hypochondriacal trends. The symptoms are likely to involve pain, weakness, and fatigue. Patient usually reflects the prime defense mechanism of repression and exhibits a general lack of insight and understanding into the psychological aspects of his difficulty.
"In summary, though there may well be some organic bases for the pain which he experiences, there [does] appear to be strong psychogenic components in his perception of pain. He may well respond to some antidepressant or anti-anxiety medication as opposed to `pain' medication. He does appear in need of some pain management training and I might refer him to Dr. Glenn Ally for that purpose."
Dr. Friedberg's report does not reach a conclusion that the plaintiff's psychological problems were caused by his accident or that they are disabling. Although, the psychological report indicates that in February of 1989, Alexander may have been in need of pain management training and/or antidepressants or anti-anxiety medication as opposed to "pain" medication, we do not find that the trial court manifestly erred in finding that Alexander did not have a work-related psychological condition which was disabling and preventing him from working. As such, we affirm the denial of benefits after March 15, 1989.

UNPAID MEDICAL BILLS
Dr. Blanda referred Alexander to Dr. Friedberg prior to the termination of plaintiff's compensation benefits. Insofar as Alexander saw Dr. Friedberg at the request of the insurer's orthopedic surgeon, we find that the defendant is responsible for the bill in the amount of $300.00. Insofar as it was stipulated at trial that American Mutual did not receive Dr. Friedberg's bill until October of 1989, after plaintiff's benefits were terminated, we find that penalties would not be due under LSA-R.S. 23:1201 as to this amount.
The other contested medical bills, including Dr. Stephen Goldware, St. Mary's Imaging and Lister Chiropractic Clinic, were all incurred after Dr. Blanda released Alexander finding nothing orthopedically wrong and after the termination of plaintiff's benefits. We find the trial court was correct in not ordering the payment of these bills insofar as the termination of benefits was based upon competent medical evidence. Insofar as the plaintiff was no longer eligible for workers' compensation benefits, the defendant was not required to pay these medical bills.

DECREE
Based upon the foregoing, we amend the judgment of the trial court to award Erving Alexander, Jr. twelve (12%) percent penalties on the $3,418.74 unpaid compensation due and award $4,000.00 in attorney's fees. Additionally, we award $300.00 for the payment of Dr. Friedberg's bills. The remainder of the trial court's judgment is affirmed.
Costs of this appeal to be assessed against the defendants, B.F. Trappey & Sons, Inc. and American Mutual Insurance Company, defendants-appellees.
REVERSED IN PART; AFFIRMED AS AMENDED AND RENDERED.